IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| R.O. Levy and Betty A. Etheredge, ) | |
| ) | C/A No. 3:03-3093-MBS |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | **O R D E R** |
| Lexington County, South Carolina, ) | |
| School District Three Board of Trustees, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiffs R.O. Levy and Betty A. Etheredge are black registered voters who reside in the Batesburg-Leesville area of Lexington County, South Carolina, and within School District Three. Plaintiffs brought this action under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973. The parties appeared before the court for a bench trial in December 2005 and again in March 2006. On February 19, 2009, the court issued findings of fact and conclusions of law in which the court determined that, based upon analysis of the 1994-2004 school board elections, the applicable Thornburg v. Gingles, 478 U.S. 30 (1985), factors had been met and that, under the totality of the circumstances, black voters in School District Three have been denied equal opportunity to elect School Board members of their choice. The court further concluded that at-large elections for the School Board of School District Three diluted minority voting strength in violation of Section 2 of the Voting Rights Act. The court granted Defendants' motion for interlocutory appeal on March 27, 2009.

By opinion dated December 21, 2009, the Court of Appeals for the Fourth Circuit remanded the action, finding that the court should supplement the record to include the 2006 and 2008 election results. Levy v. Lexington County, 589 F.3d. 708, 715 (4th Cir. 2009). The Fourth Circuit also took

the opportunity to provide guidance to the court with respect to the proper evaluation of the Gingles factors.

Subsequent to a status conference on February 9, 2010, the parties submitted additional briefing and supplemental expert reports addressing the concerns enumerated in the Fourth Circuit's opinion remanding this case. Plaintiffs and Defendants filed cross-motions for summary judgment on May 17, 2010. On May 28, 2010, Plaintiffs and Defendants each filed a response in opposition to the opposing party's motion. Plaintiffs and Defendants each filed a reply brief on June 4, 2010. The court held a hearing on June 14, 2010, as well as an evidentiary hearing on July 20, 2010 and July 30, 2010, at which times Dr. Ruoff and Dr. Epstein, the parties' respective expert witnesses, testified as to their findings and conclusions.

The court engaged the services of a statistical expert to educate the court regarding the methodologies utilized by both Dr. Ruoff and Dr. Epstein. The court posed interrogatories to the parties, which were responded to on October 7, 2011. On October 25, 2011, Defendants filed objections to Plaintiffs' reply. Plaintiffs filed a response in opposition to Defendants' objections on November 1, 2011, to which Defendants filed a reply on November 15, 2011.

Taking into account all the evidence submitted, as well as the counsel provided by the Fourth Circuit, the court issued an Order on April 12, 2012, as amended on April 18, 2012. The court concluded that Plaintiffs failed to establish the third prong of the Gingles test, and thus failed to satisfy their burden of establishing a cognizable violation of Section 2 of the Voting Rights Act. Accordingly, the court granted summary judgment in favor of Defendants.

This matter now is before the court on a Bill of Costs filed by Defendants on April 24, 2012 (ECF Nos. 273, 274). Plaintiffs filed objections to the Bill of Costs on May 10, 2012, to which Defendants filed a reply on May 17, 2012. Plaintiffs filed a surreply on May 24, 2012.

Defendants move for costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure. Rule 54(d)(1) provides, in pertinent part: "Unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Rule 54(d)(1) gives rise to a presumption that costs are to be awarded to the prevailing party. Ellis v. Grant Thornton LLP, 434 F. App'x 232, 234 (4th Cir. 2011) (quoting Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999)). Accordingly, it is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party. Id. (citing Teague v. Bakker, 35 F.3d 978, 996 (4th Cir.1994)).

Defendants seek costs in the amount of $12,898.70. This amount includes (1) filing fee in the amount of $455 for the notice of appeal (Local Civil Rule 54.03(A)(1)(b)); costs of $6,506.64 for deposition transcripts for Fox, Burgess, Rikard, Koon, Black, Berry, Shealy, Kennedy, Levy, Etheredge, Ruoff, Epstein, Lester, Edmond, and Cain (Local Civil Rule 54.03(C)(1)); printing fees for of $4,309.57 for appellate petition and briefs (Local Civil Rule 54.03(D)); witness fees of $1,545.52 for Epstein to travel from New York to Columbia, South Carolina (Local Civil Rule 54.03(E)); and printing fee of $81.97 for maps entered as exhibits at trial (Local Civil Rule 54.03(F)(1)(d)). Although Plaintiffs contest some of the costs claimed by Defendants, the most significant argument is whether Defendants' bill of costs should be denied in full.

When a court denies an award of costs, it must articulate some good reason for its denial. Ellis, 434 F. App'x at 234 (citing cases). The reason must be that "there would be an element of injustice in a presumptive cost award." Id. (quoting Cherry, 186 F.3d at 446). Among the factors that justify denying an award of costs are: (1) misconduct by the prevailing party; (2) the unsuccessful party's inability to pay the costs; (3) the excessiveness of the costs in a particular case; (4) the limited value of the prevailing party's victory; or (5) the closeness and difficulty of the issues

3

decided. Id. (citing Cherry, 186 F.3d at 446). Moreover, although the unsuccessful party's "'good faith in pursuing an action is a virtual prerequisite to receiving relief from the normal operation of Rule 54(d)(1), that party's good faith, standing alone, is an insufficient basis for refusing to assess costs against that party.'" Id. (quoting Cherry, 186 F.3d at 446).

In this case, there is no suggestion of misconduct by Defendants, the prevailing party. The court finds that the costs are not excessive, and that Defendants' victory is not of limited value. Thus, the first, third, and fourth factors militate in favor of assessing costs against Plaintiffs. As to the fifth factor, there is no dispute that the issues were close and difficult, so much so that the court was required to retain the services of an expert to educate the court regarding statistical methodology. This factor weighs in favor of denying Defendants' bill of cost, as does Plaintiffs' good faith in pursuing the action. The equal opportunity to elect candidates of choice is of paramount importance, and the court is of the opinion that Plaintiffs were sincere in advancing the within litigation.

The remaining question is whether Plaintiffs have the ability to pay costs. Plaintiffs contend that they are of modest means. Plaintiff Etheredge is employed by Richland County. Her annual salary in 2011 was $44,598, and her net monthly income before taxes is $1,647.59. See ECF No. 275-1. Plaintiff Levy avers that had a total income in 2011 of $109,647. His net monthly income before taxes is $4,860.25. Plaintiff Levy informs the court, however, that he has an outstanding medical bill of $21,000, which has a negative impact upon his financial condition. See ECF No. 275-2. The second factor weighs in favor of Plaintiffs.

In response, Defendants do not argue that Plaintiffs are not of modest means. However, Defendants contend that Plaintiffs' limited financial resources are irrelevant because Plaintiff's costs, fees, and expenses during the nine-year course of this litigation have been paid entirely by the American Civil Liberties Union Foundation, Inc. (ACLU). Defendants contend that the ACLU, has

an annual budget of nearly $109 million dollars, likewise will pay any costs assessed against Plaintiffs. The court is aware of no authority for the proposition that costs may be assessed against a nonparty. Rather, Rule 54(b) has been interpreted as allowing the court discretion to tax costs "against the losing party[.]" Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987). The court declines to take into account the ACLU's advancing costs and expenses during the course of litigation. Taken to a logical conclusion, Defendants' argument could apply any time an attorney accepted a case on a contingency basis and agreed to advance costs and fees. The court finds no support in the law for such an expansive reading of Rule 54(d).

The court finds an "element of injustice" appertains if Plaintiffs are required to pay Defendants' bill of costs, given the length of the litigation, the complexity of the statistical analysis, and the requirement for supplemental briefing and argument subsequent to the Fourth Circuit's opinion remanding the cause. Accordingly, the court **denies** Defendants' bill of costs (ECF Nos. 273, 274).

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina

December 20, 2012.